UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID NADIG,

Plaintiff,

v. Case No.: 2:25-cv-138-SPC-KRH

SAN CARLOS ESTATES WATER CONTROL DISTRICT,

Defendant.

---

# OPINION AND ORDER

Before the Court are two motions for summary judgment: one filed by Defendant San Carlos Estates Water Control District (Doc. 53) and a partial one filed by Plaintiff David Nadig (Doc. 54). The parties each responded in opposition (Docs. 55, 56) and filed replies (Docs. 57, 59). For the below reasons, the Court denies Plaintiff's motion and grants Defendant's motion.

## Background

In this action, Plaintiff disputes the validity and constitutionality of a special assessment Defendant issued. Because Plaintiff's claims lack merit or are otherwise dismissed to be refiled in state court, the Court provides only a brief factual overview. The below facts are undisputed.[1]

---

[1] Notably, in Plaintiff's response, he failed to respond to Defendant's statement of material facts, as the Court requires. (Doc. 33 § D.4.b). So Defendant's facts are treated as undisputed.

Defendant is a water control district organized under Florida law. It operates and maintains drainage improvements and stormwater infrastructure within the district. Defendant undertook a capital improvement project to improve drainage and related infrastructure, which it financed through a bond. The cost of repaying the bond was allocated to the various land parcels that received the special benefit of the improvements. The parcel owners made these payments annually with their property taxes. In other words, the tax collector received the payments on Defendant's behalf.[2]

To save on interest, Defendant paid off the bond early using funds from its maintenance reserve. After the early payoff, Defendant notified the Florida Department of Revenue that it no longer needed to collect from the parcel owners though the tax roll process. Although Defendant paid off the bond early with its own funds, over $172,000 in assessments remained outstanding from certain parcel owners in the district. To recoup these payments and replenish the reserve fund, Defendant notified parcel owners with outstanding assessment obligations that they must pay their remaining balances in two equal annual payments directly to Defendant. Plaintiff, who owned three

(*Id.* ("[A]ny fact that the opposing counsel or party does not specifically controvert . . . may also be deemed undisputed if supported by record evidence.")).

[2] This process is outlined in Florida's Uniform Assessment Collection Act, Fla. Stat. § 197.3632.

parcels with an outstanding balance, owed $980.47 in total. But he declined to pay.

Defendant maintains a policy that provides, in part, that landowners who have not paid their assessments cannot vote in the election for district supervisors ("Voting Policy"). (Doc. 54-2). This policy is consistent with Florida Statute § 298.12(1), which provides that "[o]wners whose assessments have not been paid for the previous year are not entitled to vote" in a water control district's annual election of supervisors. Despite this policy and Florida law, to date, Plaintiff has not been deprived of the opportunity to vote in the election for district supervisors. All the same, he anticipates that will change in the upcoming election, given his refusal to pay his outstanding assessments.

Based on the foregoing, Plaintiff brings two claims under 42 U.S.C. § 1983: deprivation of right to vote without due process under the Fourteenth Amendment (count I) and unconstitutional poll tax under the Fourteenth Amendment (count II). (Doc. 1). He also seeks a declaration that Defendant implemented the assessment in violation of several Florida statutes (count III). (*Id.*).

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it

"might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to show a lack of genuinely disputed material fact. *Clark v. Coats & Clark,* 929 F.2d 604, 608 (11th Cir. 1991). If carried, the burden shifts to the nonmoving party to point out a genuine dispute. *Id.* At this stage, a court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341–42 (11th Cir. 2002). That the parties have filed cross-motions for summary judgment does not alter the standard. *See United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed[.]" (citation omitted)).

**Analysis**

Plaintiff seeks partial summary judgment on his Fourteenth Amendment deprivation of right to vote without due process claim (count I) and his declaratory judgment claim (count III). He does not request judgment on his unconstitutional poll tax claim (count II). (Doc. 54). Defendant seeks

summary judgment on Plaintiff's federal claims and asks that the Court decline to exercise supplemental jurisdiction over the declaratory judgment claim. (Doc. 53). The Court addresses the federal claims in turn. Because both claims fail, the Court declines to exercise supplemental jurisdiction over the declaratory judgment claim.

## I. Deprivation of Right to Vote (count I)

Under the Due Process Clause of the Fourteenth Amendment, a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This amendment "provides two different kinds of constitutional protection: procedural due process and substantive due process." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013) (citation omitted). The substantive component of the Due Process clause protects government restriction on fundamental rights, whereas the procedural component is concerned with the fairness and adequacy of procedure when the government deprives one of life, liberty, or property. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992). "A violation of either of these two kinds of protection may form the basis for a suit under § 1983." *Maddox*, 727 F.3d at 1118.

Plaintiff appears uncertain as to what kind of due process claim he brings. Earlier in this action, he explicitly forfeited a substantive due process claim, stating in no uncertain terms: "Plaintiff's federal claims only allege that

Defendant violated Plaintiff's procedural due process rights and imposed an unconstitutional poll tax, and in no way frames any allegation in the Complaint as accusing Defendant of violating Plaintiff's substantive due process rights." (Doc. 21 at 12–13).

Despite this unambiguous forfeiture, Plaintiff's entire summary judgment motion raises a substantive due process claim. He argues "Defendant has unconstitutionally deprived Plaintiff of his right to vote in violation of the Fourteenth Amendment to the United States." (Doc. 54 at 13–14). He employs a similar tactic in his response, asserting that "the action to be reviewed by this Court is the deprivation of Plaintiff's right to vote under the Voting Policy as a result of his refusal to pay the Special Assessments[.]" (Doc. 55 at 9). As Plaintiff's own words show, he specifically challenges the deprivation of his right to vote, not the lack of process leading to such deprivation or to challenge it. Having forfeited a substantive due process claim, it's too late to raise it now.

Even addressing the merits of a *procedural* due process claim, Plaintiff falls well short. "A plaintiff raising a procedural-due-process claim must show (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Howard v. Coonrod*, 134 F.4th 1136, 1149 (11th Cir. 2025) (citation omitted). As the Eleventh Circuit has explained "again and again," a procedural due process claim "can

exist only if no adequate state remedies are available." *Flagship Lake Cnty. Dev. No. 5, LLC v. City of Mascotte, Fla.*, 559 F. App'x 811, 815 (11th Cir. 2014). But Plaintiff fails to show he was deprived of adequate process.

Plaintiff believes he was not afforded adequate process when deprived of his right to vote in the water district supervisor election. He provides no authority to support his position. He makes no argument as to what process he was denied or what process he believes he was owed. But the reason is clear: he can't. As explained, the Voting Policy and Florida law deprive landowners of their ability to vote in the water district election if they failed to pay their special assessment from the prior year. (Doc. 54-2); Fla. Stat. § 298.12(1). In other words, Plaintiff was deprived of his ability to vote through generally-applicable legislative, not individualized adjudicative, action. Thus, he was not entitled to any process before the deprivation because the adoption of the Voting Policy and statute were constitutionally sufficient. *See Jones v. Governor of Fla.*, 975 F.3d 1016, 1048 (11th Cir. 2020) (rejecting procedural due process claim by convicted felons deprived of right to vote because "any deprivation of that right was accomplished through the legislative process . . . which provide[s] more than adequate procedures for the adoption of generally applicable rules regarding voter qualifications").

Indeed, Plaintiff does not claim any deprivation based on adjudicative action. *See id.* (explaining to invoke the framework of *Mathews v. Eldridge*,

424 U.S. 319 (1976), there must have been a deprivation of a constitutionally protected interest by adjudicative action). He points only to the Voting Policy generally and asserts that "by not paying the Special Assessments, Plaintiff has been rendered ineligible to vote under the Voting Policy." (Doc. 54 at 12). But even assuming Defendant adjudicated Plaintiff ineligible to vote, he could have (and still can) challenge the purported deprivation in Florida state court. *See Lindbloom v. Manatee Cnty.*, 808 F. App'x 745, 750 (11th Cir. 2020) ("An appeal of a final administrative order to the Florida State Circuit Court satisfies due process because the circuit court has the power to remedy any procedural defects and cure due process violations."); *McKinney v. Pate*, 20 F.3d 1550, 1563 (11th Cir. 1994) (explaining Florida courts possess broad powers of review). In any event, Plaintiff does not dispute that he has not paid his assessments, so it is unclear what there is to appeal anyway.

What's more, Plaintiff presents no authority suggesting the right to vote in a special water district election is a constitutionally protected interest.[3] "A party's failure to cite legal authority in support of its position suggests either that there is no authority to sustain its position or that it expects the court to do its research." *Alonso Cano v. 245 C & C, LLC*, No. 19-21826-CIV, 2019 WL

---

[3] Apart from the occasional case regarding the right to vote in general elections (which are inapplicable to this special-district election), Plaintiff cites Fla. Stat. § 298.11 as the applicable authority granting him the right to vote in the special district election. (Doc. 54 ¶ 38). But he ignores that the very next section— § 298.12—is also what deprives him of the right to vote if he has not paid his assessments.

11769102, at *10 (S.D. Fla. Nov. 25, 2019) (cleaned up). But the Court declines the invitation to do Plaintiff's research, and his claim fails on this basis as well. *See also Arrington v. Helms*, 438 F.3d 1336, 1349 (11th Cir. 2006) (rejecting procedural due process claim because plaintiffs failed to show they were deprived of a constitutionally protected interest).

In sum, Plaintiff's apparent attempt to resurrect a substantive due process claim fails, and his procedural due process claim (which his motion does not bother to address anyway) falls flat. The Court thus grants judgment in Defendant's favor and against Plaintiff as to count I.

## II. Unconstitutional Poll Tax (count II)

Plaintiff alleges that Defendant's policy requiring all property owners in San Carlos Estates to pay assessments as a precondition to voting in board of supervisor elections constitutes an unconstitutional poll tax. (Doc. 1 ¶¶ 34–35). He brings this claim under the Fourteenth Amendment, alleging the "poll tax" deprived him of his right to vote without due process under the Fourteenth Amendment. (*Id.* ¶ 33). But, once again, Plaintiff does not seem to understand his own claim. If he is claiming Defendant's policy is an unconstitutional poll tax under the Fourteenth Amendment's Due Process Clause, this would be a substantive due process claim (which he forfeited). To the extent he is claiming a lack of process (which makes no sense really), such a claim fails for the same reasons outlined above.

And yet again, Plaintiff cites no authority in his response suggesting the Voting Policy constitutes a poll tax. He provides no authority demonstrating that voting in a special water district election is a constitutionally secured right, let alone that conditioning that right on paying special assessments violates it. None. Instead, he simply argues that Defendant fails to show its policy is *not* an unconstitutional poll tax. (Doc. 55 at 16). But that's not how it works. Without any effort at analysis or citation to authority from Plaintiff,[4] the Court grants summary judgment in Defendant's favor on count II.

## III. Declaratory Judgment (count III)

Plaintiff seeks a declaration that Defendant issued the assessment in violation of multiple Florida statutes. But the Court declines to exercise supplemental jurisdiction over this claim. A district court may decline supplemental jurisdiction when one of four conditions is met:

> (1) The claim raises a novel or complex issue of State law,
> (2) The claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) The district court has dismissed all claims over which it has original jurisdiction, or
> (4) In exceptional circumstances, there are other compelling reasons for declining jurisdiction.

[4] Plaintiff did not seek summary judgment on his poll tax claim. And, as noted, he makes no argument in his response suggesting the Voting Policy constitutes an unconstitutional poll tax. It seems Plaintiff's goal was to survive summary judgment and advance this claim to trial. But the question presented in his poll tax claim is a purely legal one, which a jury cannot answer. *See Ranch House, Inc. v. Amerson*, 238 F.3d 1273, 1277 (11th Cir. 2001) ("The constitutionality of a statute is a question of law[.]"). So Plaintiff's failure to advance any argument supporting his claim dooms it.

28 U.S.C. § 1367(c). Although multiple of these conditions are satisfied here, the Court need not look further than the third. *See Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006) ("Any one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims.").

The Court has dismissed both of Plaintiff's federal claims—the claims over which it has original jurisdiction. "Although § 1367 uses the term 'dismiss' to describe when this condition is met, the condition can still be satisfied by an order granting summary judgment over all claims which the district court had original jurisdiction." *Austin v. Metro Dev. Grp., LLC*, 571 F. Supp. 3d 1279, 1294 (M.D. Fla. 2021); *see also Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005) (affirming the district court's ability to decline supplemental jurisdiction under § 1367(c)(3) when the court had granted summary judgment for the defendant on the federal claim). As outlined above, the Court grants summary judgment in Defendant's favor on counts I and II, which are the sole federal claims.[5] As such, dismissal without prejudice of Plaintiff's declaratory judgment claim is appropriate. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When all federal claims are

[5] The Court does not otherwise have diversity jurisdiction under 28 U.S.C. § 1332.

dismissed before trial, a district court should typically dismiss the pendant state claims as well.").

That's generally not the end of the inquiry. The Court must also consider "whether 'judicial economy, convenience, fairness, and comity' counsel dismissal of the remaining state claims." *Austin*, 571 F. Supp. 3d at 1294 (quoting *Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 803 F.3d 518, 532 (11th Cir. 2015)). However, "in the usual case in which all federal-law claims are eliminated before trial," as here, the balance of these factors "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Indeed, the Eleventh Circuit encourages district courts to do so. *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."). To be sure though, the Court considers the factors, which favor declining supplemental jurisdiction.

The remaining issue in count III involves determining whether Defendant complied with technical procedures for imposing special assessments outlined under Florida statutes. The state court is better suited to make such a determination. In fact, it squanders judicial resources for this Court to answer such questions. Why? Because even if the Court agreed with Plaintiff and held Defendant improperly charged the special assessment, it

seems Defendant could simply go back to the drawing board and do it properly. *See* Fla. Stat. § 170.14 (explaining if an assessment is rendered invalid "the governing authority of the municipality shall take all necessary steps to cause a new assessment to be made for the whole or any part of any improvement or against any property benefited by any improvement").[6] Also, both parties reside in Lee County and can easily litigate the issue there. And Defendant specifically requested that the Court decline jurisdiction over the declaratory judgment claim. (Doc. 53 at 17–18).

For all these reasons, the Court declines to exercise supplemental jurisdiction over the declaratory judgment claim.

Accordingly, it is

**ORDERED:**

(1) Defendant's Motion for Summary Judgment (Doc. 53) is **GRANTED**.

a. The Court grants summary judgment in Defendant's favor as to counts I and II.

b. The Court declines to exercise supplemental jurisdiction over count III. Count III is thus **DISMISSED without prejudice.**

[6] And considering Plaintiff's federal claims—the jurisdictional hook for this case—lack any merit, the declaratory action (which it seems is the real focus of this case) never should have been in federal court to begin with.

(2) Plaintiff's Motion for Partial Summary Judgment (Doc. 54) is **DENIED**.

(3) The Clerk is **DIRECTED** to enter judgment for Defendant and against Plaintiff, terminate any deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on August 10, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record